IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39816

| | | |
|---|---|---|
| TRACY L. GAGNON and JEFFREY GAGNON, wife and husband, | ) ) ) | |
| | ) | Coeur d'Alene, April 2013 Term |
| Plaintiffs-Appellants, | ) ) | |
| | ) | 2013 Opinion No. 84 |
| v. | ) ) | Filed: August 9, 2013 |
| WESTERN BUILDING MAINTENANCE, INC., | ) ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Respondent, | ) ) | |
| and | ) ) | |
| JOHN and JANE DOES A-H, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

The grant of summary judgment is <u>affirmed</u>. Costs on appeal are awarded to Respondent.

Starr Kelso, Coeur d'Alene, attorney for Appellants.

Law Offices of Raymond Schutts, Liberty Lake, Washington, attorneys for Respondent. Edward G. Johnson argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

A bank hired a contractor to perform janitorial and snow removal services. The written contract between the parties lapsed, but they orally renewed their agreement according to the same terms. One morning, a bank employee arrived at work and parked in the parking lot. She stepped out of her car, slipped on black ice, and was injured. The employee sued the contractor, claiming that it had negligently failed to spread ice melt on the parking lot. The district court granted the contractor's motion for summary judgment, holding that the contractor owed no duty to spread ice melt on the parking lot on any day in which less than two inches of snow had fallen. The employee timely appealed to this Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In November of 2004, Western Building Maintenance, Inc. ("Western") entered into a contract (the "Written Contract") with Wells Fargo Bank, N.A. ("Wells Fargo") under which Western agreed to provide janitorial and snow removal services for Wells Fargo at various locations in Idaho and Washington. The Contract, which was in effect between December 1, 2004 and November 30, 2006, included detailed "Performance Specifications" for janitorial services and snow removal. The "Snow Removal Specifications" provide in pertinent part:

1. CONTRACTOR will be responsible for managing and supervising all Snow Removal Services. CONTRACTOR will provide all necessary labor, equipment, materials and supplies needed to perform the specifications.

2. CONTRACTOR will bid Snow Removal Services to vendors pre-approved by BANK, using the specifications below:

. . . .

   b. CONTRACTOR will furnish all necessary labor, equipment, materials and supplies (with the exception of ice melt) needed to perform the conditions and specifications of Snow Removal.

   c. CONTRACTOR will clear all parking areas and/or sidewalks when two (2) inches of snow has accumulated. The initial clearing will occur prior to 8:00 a.m. of each snow day.

   d. Ice melt is to be used when necessary. In most cases, ice melt will be furnished by BANK. If not furnished, ice melt is to be billed as an extra item.

. . . .

   f. Areas surrounding the BANK ATMs should be kept reasonably clear of snow and ice 7 days per week, 24 hours a day

. . . .

4. CONTRACTOR shall communicate effectively with subcontractors and other employees to ensure that all parking lots, sidewalks and other areas designated by this contract are cleared of snow and ice in a timely manner.

(Emphasis in original.)

On the morning of December 5, 2007, Tracy Gagnon arrived at the Wells Fargo branch in Hayden, Idaho (the "Hayden Branch"), where she was an employee. The Hayden Branch was one of the properties for which Western had contracted to provide snow removal services. Gagnon parked in the parking lot, stepped out of her car, slipped on black ice, and was injured. She sued Western,[1] alleging that it had a duty to maintain the parking lot in a manner that was safe for customers and employees, including by removing snow and ice; that Western breached

---

[1] Tracy Gagnon's husband, Jeffrey Gagnon, also filed a loss-of-consortium claim. Because Jeffrey Gagnon's claim is wholly contingent on Western's liability to his wife, *Jeremiah v. Yanke Mach. Shop, Inc.*, 131 Idaho 242, 249, 953 P.2d 992, 999 (1998), he is not mentioned further.

2

this duty; and that, as a proximate result, she was injured. Western answered, asserting that it had agreed only to remove "fresh accumulations of two inches or more of snow from the Wells Fargo parking lot."

Western then moved for summary judgment, arguing that it owed no duty to Gagnon. In support of its motion, Western attached the Affidavit of Western's owner, Jan C. Vaterlaus. Vaterlaus admitted that Western provided snow removal services for Wells Fargo since 2004 but noted that there was no written contract in effect during the winter of 2007–08. According to Vaterlaus, at the time of Gagnon's accident "Western was performing its snow removal services in accordance with the past practices and understandings previously developed with Wells Fargo." These included removing snow accumulations of two or more inches and applying ice melt to sidewalks and around ATMs. However, Vaterlaus specifically denied being either authorized or requested to place ice melt or sand on any Wells Fargo parking lot during the winter of 2007–08. In accordance with the oral agreement, "Western plowed snow from the sidewalks and parking lot and applied ice melt to the sidewalks of the Hayden branch on December 2 and 3, 2007. . . . Western's next record of service at the Hayden branch parking lot indicates snow removal and application of ice melt to the sidewalks on December 8, 2007."

Gagnon submitted the Affidavit of Heather Gable in opposition to Western's motion. Gable averred that she is a property manager for Wells Fargo's Corporate Properties Division, and that the Hayden branch is under her management. She testified that, although the Written Contract had expired, "Wells Fargo and Western Building Maintenance have agreed to a continuation of their relationship on the same terms as set forth in the written agreement," and that this understanding "has been confirmed verbally with Western Building Maintenance on a yearly basis." In its brief in this appeal, Western concedes that the oral contract in effect at the time Gagnon was injured incorporated the terms of the Written Contract.

The district court granted Western's motion for summary judgment, holding that "[t]he plain language of the 2004 Agreement shows that the Defendant did not undertake an absolute duty to remove snow and distribute ice melt in the Wells Fargo Bank parking lot on days where less than two (2) inches to [*sic*] snow falls." The district court then entered a final judgment from which Gagnon timely appealed.

### III. ISSUE ON APPEAL

Is there a genuine issue of material fact regarding whether Western owed a duty to Gagnon to spread ice melt on the parking lot?

## IV. STANDARD OF REVIEW

"This Court exercises free review over appeals from a district court's grant of summary judgment, applying the same standard the district court used in ruling on the motion." *Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 103, 294 P.3d 1111, 1115 (2013). Therefore, we freely review whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

> The party initially bringing the motion has the burden to prove that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. After the moving party meets this burden, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. This Court will construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. However, the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial.

*Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 103–04, 294 P.3d 1111, 1115–16 (2013) (citations and quotation marks omitted). "Circumstantial evidence can create a genuine issue of material fact. . . . However, the non-moving party may not rest on a mere scintilla of evidence." *ParkWest Homes, LLC v. Barnson*, No. 38919, 2013 WL 1667566, at *3, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013).

## V. ANALYSIS

**No genuine issue of material fact remains regarding whether Western owed a duty to spread ice melt on the parking lot.**

We begin our analysis of this case with a description of the general principles of the law of negligence, and particularly the concept of duty.

> In order to establish a cause of action for negligence, a plaintiff must establish: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999). Whether a duty exists is a question of law, "over which this Court exercises free review." *Id.* Generally speaking, "[e]very person, in the conduct of his business, has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others." *Id.*

*Rountree v. Boise Baseball, LLC*, 154 Idaho 167, 171, 296 P.3d 373, 377 (2013).

Gagnon contends that the Written Contract created a duty requiring Western to inspect for, and clear, ice from the parking lot in a timely manner and that Western negligently failed to

4

do so. However, the Written Contract could not create a tort duty on the part of Western. As we have stated in *Baccus v. Ameripride Servs., Inc.*, 145 Idaho 346, 179 P.3d 309 (2008):

> Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort. But, the mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself. Instead, active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient.

*Id.* at 350, 179 P.3d at 313 (internal citations and quotations omitted). Therefore, the Written Contract did not create a tort duty requiring Western to do anything, and the alleged breach of that contract could not create tort liability.

The source of a tort duty simply does not arise from the duty of contractual performance. A duty can arise, however, from undertaking a duty which induces reliance. In *Baccus*, Ameripride had agreed pursuant to a contract with the employer of Baccus to place mats in the entry to certain buildings as a safety measure to prevent slipping due to bad weather. It failed to do so on December 17. The Court simply held that Baccus's reliance on Ameripride's previous acts of placing the mats was the source of the duty, not the contractual obligation to do so. In other words, the existence of a contractual duty is irrelevant to the legal analysis. The contract simply creates the circumstances for the commission of a tort by failing to perform a duty that induced reliance by others on its performance. In other words, reliance on the duty is a required element of a claim by third parties. Here, it is undisputed that Western did not spread ice melt on the Hayden branch parking lot during the winter of 2007-2008 and therefore it is inconceivable that Gagnon could have relied upon it to do so.

## VI. CONCLUSION

Gagnon has failed to come forward with evidence refuting Western's assertion that it was neither authorized nor requested to spread ice melt on the Hayden Branch parking lot during the winter of 2007–08 or that she had any reason to rely on it doing so. Therefore, there is no triable issue, and the district court properly granted summary judgment in Western's favor. No attorney's fees were requested. Costs on appeal are awarded to Western.

Chief Justice BURDICK and Justices EISMANN, J. JONES and HORTON **CONCUR**.

5