# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50273

| | | |
|---|---|---|
| JOHN HASTINGS, JR., | ) | |
| | ) | |
| Plaintiff-Counterdefendant-Appellant, | ) | Boise, February 2024 Term |
| | ) | |
| v. | ) | Opinion filed: April 24, 2024 |
| | ) | |
| IDAHO DEPARTMENT OF WATER | ) | Melanie Gagnepain, Clerk |
| RESOURCES, a political subdivision | ) | |
| of the STATE OF IDAHO, | ) | |
| | ) | |
| Defendant-Counterclaimant-Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The order of the district court is affirmed.

J. Kahle Becker, Attorney at Law, Boise, for Appellant. J. Kahle Becker argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Meghan M. Carter argued.

_____

MOELLER, Justice.

This appeal arises from litigation between the Idaho Department of Water Resources (the "Department") and John Hastings, Jr., a landowner in Blaine County who made unauthorized alterations to the Big Wood River. Hastings appeals from the district court's decision to award summary judgment to the Department on the issue of a statute-of-limitations defense and the partial judgment entered against him. He contends that the Department was barred from pursuing an enforcement action against him based on the statute of limitations set forth in Idaho Code section 42-3809. For the reasons explained below, we affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hastings owns real property in Ketchum, Idaho, adjacent to the Big Wood River and upstream from the Warm Springs Bridge. During a period of high spring runoff and summer flooding in 2017, Hastings placed rock armoring, or "emergency riprap," along 193 feet of the streambank to stabilize it. While initially done with verbal approval from the city, the work

1

ultimately removed riparian vegetation and discharged fill material below the mean high-water mark of the Big Wood River without a permit from the Department for altering the channel.

On September 11, 2017, the Department issued a notice of violation to Hastings for unauthorized alterations to the Big Wood River. Hastings was ordered to cease all unauthorized work below the mean high-water mark of the river. He was also ordered to submit a streambank bioengineering plan for river restoration, including "measures for replanting the riparian area(s)" with native trees and shrubs "and measures to restore fish and wildlife habitat."

Hastings and the Department met for a compliance conference on October 3, 2017. On January 26, 2018, Hastings and the Department entered into a consent order and agreement (the "Consent Order") under Idaho Code section 42-1701B. The Consent Order required Hastings to pay a civil penalty and submit a restoration plan for the streambank. The Consent Order laid out the following terms:

> 1) By February 15, 2018, Respondent shall pay a civil penalty in the amount of $10,000 and submit a Joint Application for Permit ("application") to the Department that proposes a plan to restore the streambank at the subject lands. The restoration plan must be designed to reduce further erosion and help restore more functional riverine conditions and include the following minimum requirements:
>
> > a. bioengineering treatments to incorporate large woody material along the streambank (e. g. root wad engineered log jam and brush or tree revetment)
> >
> > b. a planting plan to help re-establish a native riparian buffer between the Big Wood River and the upland parcel at the subject lands.
>
> 2) Respondent shall comply with the terms and conditions of any permit the Department issues subsequent to the submittal of an acceptable application and restoration plan pursuant to Order paragraph no. 1.
>
> 3) Respondent shall contact the Department immediately after completing the restoration plan at the subject lands. The Department shall inspect the completed work within 14 days after notification of completion to determine if the work meets the criteria and conditions of the restoration plan.
>
> 4) The Department agrees to refund Respondent $7,500 of the civil penalty if the Respondent successfully completes the restoration plan by December 31, 2018, and meets the requirements of Order paragraphs 1-3. If there are circumstances beyond the control of Respondent, he will contact the Department by November 30, 2018, to request an extension of the deadline stated above.
>
> 5) Upon execution of this agreement, the Department's receipt of the agreed civil penalty described above, and full compliance with the terms contained herein, NOV no. E2017-1236 will be considered resolved.

Hastings paid the $10,000 civil penalty pursuant to the Consent Order. Brockway Engineering, on behalf of Hastings, filed a proposed restoration plan with the Department, which it rejected. Over the next few months, two revised plans were submitted but were each rejected for failing to comply with the terms of the Consent Order. Although not at issue in this appeal, Hastings maintains that all of his proposals were in compliance with the Consent Order.

Immediately following the rejection of Brockway Engineering's revised plans, Hastings contacted Aaron Golart, the Department's Stream Channel Coordinator, to request an extension of time to complete the restoration required by the Consent Order. Golart granted the extension in an email to Hastings's attorney on November 2, 2018. Golart's email stated: "With respect to the time extension you have requested, [the Department] is willing to grant the request to extend the time to complete construction on the restoration until March 15, 2019." The parties agree that, aside from the extension of the deadline, the terms of the Consent Order were not modified and no new agreement was entered. The parties also agree that this email was a valid extension of the deadline originally set forth in the Consent Order.

Brockway Engineering then submitted a third revised plan that addressed the Department's concerns for the river restoration. Hastings and his corporation, Embassy Auditoriums, Inc., also submitted a joint application to the Department seeking a stream channel alteration permit for streambank stabilization. The Department conditionally approved Hastings's restoration plan by issuing a "Conditional Permit," which imposed several conditions related to completion of the restoration work required in the Consent Order. However, Hastings opposed these conditions and filed a petition for a hearing on May 21, 2019, as authorized by the Department's Administrative Rule 37.03.07.70, which was adopted pursuant to the Idaho Rules of Administrative Procedure ("IDAPA"). Hastings's petition stated that "[c]ertain requirements [in the Conditional Permit]. . . are inconsistent with the Consent Order and the agreement that led to the filing of the Restoration Plan." In the same petition, Hastings also stated that he "would be willing to participate in an informal meeting to discuss resolution of this matter" to avoid unnecessary delay or litigation. While a declaration provided by a Department employee indicated that the Department entered "discussions on the conditional terms of the [Conditional] Permit" with Hastings, the Department also noted that the parties eventually "reached an impasse."

The record is silent concerning what, if anything, happened for the next two years, until November 15, 2021, when Hastings filed an action in Ada County District Court seeking a

declaratory judgment against the Department. In his complaint, he sought a ruling from the court declaring that the Department could no longer pursue an enforcement action against him. Hastings asserted that the two-year statute of limitations set forth in Idaho Code section 42-3809, the statute authorizing the director of the Department to commence an administrative enforcement action for violation of an order governing the alteration of a stream channel, had run. In the alternative, Hastings argued that he was entitled to a declaratory judgment clarifying his rights and obligations in conducting restoration activities on the properties identified in the Consent Order.

Four days later, the Department initiated an administrative proceeding pursuant to Idaho Code section 42-3809 naming Hastings as a party. On December 21, 2021, it filed an answer and counterclaim in Hastings's district court action seeking specific performance in accordance with Idaho Code sections 42-1701B(4) and 42-3809, which would require Hastings to comply with the Consent Order. Hastings filed an answer to the counterclaim asserting numerous affirmative defenses, including the two-year statute of limitations under Idaho Code section 42-3809. None of the pleadings filed in the district court action to this point were verified.

The parties agreed to bifurcate the issues in the district court action to first address the statute of limitations defense. To that end, both sides stipulated to a set of facts limited to just that issue. The district court granted their request. The stipulated facts were filed with the court, and the parties subsequently filed cross-motions for summary judgment. The Department's motion for summary judgment attached a certified copy of the Conditional Permit and asked the district court to take judicial notice of it. The 32-page attachment included: a certified copy of the Conditional Permit, the Department's IDAPA rules pertaining to the Stream Channel Alteration Act and the Conditional Permit's approval, and Hastings's joint application for the Conditional Permit, including his proposed restoration plan by Brockway Engineering. In response to the Department's request for judicial notice, Hastings filed an objection and a motion to strike the Conditional Permit from the record. Hastings also filed a motion to continue so that he could pursue additional discovery and he requested sanctions under Rule 11 of the Idaho Rules of Civil Procedure.

After reviewing the motions, the district court denied the motion to strike and determined that, for summary judgment purposes, it would take judicial notice of the Conditional Permit. It determined that the Department did not submit "the [Conditional Permit] as evidence [for] proof of matters related to the damages of the riverbed or needed restoration," but it was instead submitted "as evidence of the dates for the expiration of the [Conditional] Permit, that [Hastings]

4

was informed he was entitled to request a hearing on any objections to the [Conditional] Permit pursuant to administrative rules, and that any hearing request was therefore not a violation of the Consent Order." Further, the district court found that the Conditional Permit was "an official document" appropriate for judicial notice under Idaho Code section 9-101(3) and Idaho Rule of Evidence 201 "since it is not subject to reasonable dispute that this is the Conditional Permit referenced by the parties . . . ." The court also granted Hastings's motion to continue in part, but did not allow Hastings to complete additional discovery. The parties filed supplemental briefing, and Hastings verified his earlier pleadings. Hastings then filed a motion to reconsider the district court's decision taking judicial notice of the Consent Order and denying a continuance for further discovery.

The district court heard oral arguments on the cross-motions for summary judgment on July 25, 2022. Hastings argued that the statute of limitations began to run either: (1) when he failed to complete construction by the extended deadline of March 15, 2019,[1] or (2) when he filed a petition for hearing on May 21, 2019, to express his disagreement with the terms of the Conditional Permit. Because the Department did not bring an enforcement action until it filed its counterclaim on December 21, 2021, Hastings argued that the enforcement action was untimely and barred by the two-year statute of limitations regardless of which date applied. The Department disagreed, arguing that a cause of action did not accrue until Hastings filed for declaratory judgment on November 15, 2021. Up to that point, the Department maintains that it believed that Hastings intended to complete the stream channel restoration work in accordance with the terms and conditions of the Consent Order.

In a written decision following the hearing, the district court denied Hastings's motion for reconsideration on taking judicial notice and denying a continuance. The district court found that Hastings recognized the Conditional Permit as "a true and correct Conditional Permit issued after the joint application was filed on March 15, 2019." In concluding that it could take judicial notice of the Conditional Permit, the district court explained that it would only consider the document "to the extent it addresses whether the filing of the Petition for Hearing triggered the statute of limitations." The court also determined that a continuance for "additional" discovery was unwarranted, noting that Hastings "has still not served any discovery requests . . . ."

---

[1] The district court's order mistakenly states the extended deadline as "March 15, 2021," which is a typographical error inconsistent with the record and stipulated facts of the parties.

The district court then granted summary judgment to the Department on the statute of limitations issue. In reaching this conclusion, the district court first considered the plain language of the Consent Order and whether it set a firm construction deadline for the restoration work. The district court determined that it did not. The court reasoned that while the Consent Order listed a deadline, it was not for completion of the required restoration; rather, it set a deadline for Hastings to qualify for a partial refund of the civil penalty it imposed. Thus, Hastings's failure to meet the Consent Order's deadline was not a violation of the agreement that would trigger the statute of limitations—it only meant that Hastings was not entitled to a $7500 reduction of the fine. Additionally, the Conditional Permit advised Hastings of his right to request a hearing and object to the Conditional Permit's terms. Thus, the court determined that the "use of an appeal right provided for by regulatory rule to object to certain terms of the Conditional Permit was not a violation of the Consent Order." The district court explained: "It was reasonable for the Department to interpret Hastings's request for a hearing as an attempt to resolve disputes between Hastings and the Department so that Hastings could comply with the Consent Order."

In examining when the statute of limitations began to run, the district court determined that "the earliest possible date that the Department 'ought to have reasonably known' that Hastings violated the Consent Order was December 31, 2019," because that was the "proposed completion date" Hastings listed in his permit application. Because the Department filed its counterclaim within two years of this date, the district court found the enforcement action timely. Based on this analysis, the district court entered a partial judgment against Hastings on just the statute of limitations issue pursuant to Idaho Rule of Civil Procedure 54(b). He timely appealed and the remaining issues in the case were stayed pending a decision from this Court. At the time Hastings brought this appeal, he had not commenced restoration of the streambank and the Department had not refunded any portion of the $10,000 penalty.

## II. STANDARDS OF REVIEW

When reviewing a trial court's ruling on summary judgment, we apply the same standard of review used by the trial court in ruling on the underlying motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (citation omitted). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). All facts are read in the light most favorable to the nonmoving party, with reasonable inferences drawn in that party's favor.

6

*Gagnon v. W. Bldg. Maint., Inc.*, 155 Idaho 112, 114–15, 306 P.3d 197, 199–200 (2013) (citation omitted); *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007). The moving party bears the burden to prove no genuine issues of material fact exist. *Gagnon*, 155 Idaho at 114–15, 306 P.3d at 199–200. Where there are no disputed issues of material fact, "what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428, 398 P.3d at 161.

This appeal also raises issues of interpretation—both statutory and contractual. Statutory interpretation is a question of law over which we exercise free review. *Smith v. Excel Fabrication, LLC*, 172 Idaho 725, 728, 535 P.3d 1098, 1101 (2023). The objective of statutory interpretation is to give effect to the legislative intent. *St. Luke's Health Sys., Ltd. v. Bd. of Comm'rs of Gem Cnty.*, 168 Idaho 750, 755–56, 487 P.3d 342, 347–48 (2021) (quoting *St. Alphonsus Reg'l Med. Ctr. v. Elmore Cnty.*, 158 Idaho 648, 652, 350 P.3d 1025, 1029 (2015)). This Court "begins with an examination of the literal words of a statute," and gives words "their plain, usual, and ordinary meanings." *Id.* (quoting *St. Alphonsus Reg'l Med. Ctr.*, 158 Idaho at 652–53, 350 P.3d at 1029–30).

> Provisions should not be read in isolation, but must be interpreted in the context of the entire document. . . . [T]he Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Id.* (citation omitted). Likewise, "[w]hen the language in a contract is clear and unambiguous, its interpretation is a question of law and the language will be given its plain meaning." *Harris v. State ex rel. Kempthorne*, 147 Idaho 401, 405, 210 P.3d 86, 90 (2009).

Additional standards of review will be addressed in turn.

### III. ANALYSIS

The primary issue before this Court is whether the district court erred in its application of the two-year statute of limitations period codified in Idaho Code section 42-3809 for enforcement actions under Idaho's Stream Channel Alteration Act, Idaho Code sections 42-3801 to 42-3811. More specifically, this appeal asks this Court to determine when the Department knew, or reasonably ought to have known, that Hastings was in violation of the Consent Order—the triggering event to start the statute of limitations. In addition to this key issue, Hastings argues that

7

the district court erred by (1) taking judicial notice of the Conditional Permit and (2) denying his motion to continue proceedings for discovery.

### A. The Department's enforcement action against Hastings is not barred by the statute of limitations.

Hastings suggests that this is a case of first impression inasmuch as Idaho Code section 42-3809 has not been previously interpreted by this Court. He contends that the Department was on notice that he would not comply with the Consent Order when he either (1) failed to complete construction by the extended deadline of March 15, 2019, or (2) filed a petition for hearing on May 21, 2019, to express his disagreement with the terms of the Conditional Permit. Because the Department did not file an enforcement action until it lodged its counterclaim on December 21, 2021, Hastings argues that the action is untimely and barred by the two-year statute of limitations. The Department responds that the statute of limitations in Idaho Code section 42-3809 begins to run when a party substantially violates the terms of a consent order. The Department argues that since Hastings was in compliance with the Consent Order until he filed his action for a declaratory judgment, the statute of limitations did not begin to run until he commenced this litigation. We agree with the Department's analysis.

The Stream Channel Alteration Act protects Idaho's stream channels and environments "for the protection of fish and wildlife habitat, aquatic life, recreation, aesthetic beauty, and water quality." I.C. § 42-3801. Under Idaho Code section 42-3809, the Director of the Department is "vested with the power and authority to enforce the provisions of this chapter and rules and regulations promulgated pursuant to it." No alteration of any stream channel can be made without the Director's approval under the Act. *Id.*; I.C. § 42-3803(a). The Director is also vested with authority to commence enforcement actions against any person who is in substantial violation of the Stream Channel Alteration Act, provided the action is brought within two years of the Director's actual or constructive knowledge of the violation:

> When the director of the department of water resources determines that any person is in substantial violation of any provision of this chapter or any rule, permit, certificate, condition of approval or order issued or promulgated pursuant to this chapter, the director may commence an administrative enforcement action by issuing a written notice of violation in accordance with the provisions of section 42-1701B, Idaho Code. Provided however, that no civil or administrative proceeding may be brought to recover for a violation of any provision of this chapter or a violation of any rule, permit or order issued or promulgated pursuant to this chapter *more than two (2) years after the director had knowledge or ought reasonably to have had knowledge of the violation*.

8

I.C. § 42-3809 (emphasis added).

Importantly, a "statute of limitations does not begin to run until the cause of action has accrued." *Sallaz v. Rice*, 161 Idaho 223, 228, 384 P.3d 987, 992 (2016). As noted above, under Idaho Code section 42-3809, an enforcement action cannot be brought until "the director had knowledge or ought reasonably to have had knowledge of the violation." I.C. § 42-3809. The two-year period begins to run at that time. *See Sallaz*, 161 Idaho at 228, 384 P.3d at 992. Also important to our analysis is that the parties entered the Consent Order under Idaho Code section 42-1701B. This section provides that a "consent order shall be effective immediately upon signing by both parties and shall preclude a civil enforcement action for the same alleged violation." I.C. § 42-1701B(4). However, "[i]f a party does not comply with the terms of the consent order, the director may seek and obtain in any appropriate district court, specific performance of the consent order and other relief as authorized by law." *Id.*

Here, Hastings has offered two potential dates for when the "the director had knowledge or ought reasonably to have had knowledge of the violation" of his Consent Order. First, Hastings argues that the statute of limitations began to run on March 15, 2019, when he failed to complete construction by the extended deadline. The Consent Order's applicable terms for this date read as follows: "The Department agrees to refund Respondent $7,500 of the civil penalty if the Respondent successfully completes the restoration plan by December 31, 2018 . . . ." The construction deadline was extended by the Department from December 31, 2018, to March 15, 2019, when Golart sent an email to Hastings's former attorney consenting to the extension.

While Hastings is correct that he did not complete construction by either the December 31st or March 15th deadlines, he has misconstrued the plain language of the Consent Order. While the agreement contains a December 31, 2018, deadline for completing construction, this deadline was only for the purpose of receiving a $7,500 refund of his civil penalty. The same logic applies to the extended deadline of March 15th. In other words, while the Consent Order created a financial incentive for Hastings to complete the project within a specified time—a 75% reduction of the civil penalty if the project was completed by either deadline—that provision did not establish a construction completion date. Hastings even conceded this point in his reply brief when he stated that "[t]he parties agree that the Consent Order does not have a specified deadline for completion of construction." Thus, we cannot agree with Hastings's contention that the Director "had knowledge or ought reasonably to have had knowledge" that Hastings was in violation of the

9

Consent Order on December 31, 2018, or March 15, 2019. Indeed, Hastings still lacked a final permit from the Department, which was essential before he could even begin construction. I.C. § 42-3803(a). Hastings cannot argue that the Department should have known he was in violation of the Consent Order by failing to *finish construction* when he was still actively working with the Department to modify the very permit that would allow him to *begin construction*.

The second potential date offered by Hastings for commencing the statute of limitations is May 21, 2019, when he filed a petition for a hearing to express his formal disagreement with the terms of the Department's conditional approval for a permit. He argues that the filing of his petition put the Department and its Director on notice of a substantial violation of the Consent Order. We agree with the Department that this argument "ignores the statutory and regulatory framework behind the permit process."

Under the Department's administrative rules, a permit applicant has a right to seek a hearing on a limited or conditioned permit. IDAPA 37.03.07.070. The provision states:

> Any applicant who is granted a limited or conditioned permit, or who is denied a permit, may seek a hearing on said action of the Director by serving on the Director written notice and request for a hearing before the Board within fifteen (15) days of receipt of the Director's decision.

*Id.* Hastings's decision to exercise his right to seek a hearing put the Department on notice that he opposed the conditions imposed through the limited approval of *the Conditional Permit*. However, the petition for a hearing did not constitute a violation of *the Consent Order* or put the Department on notice of an anticipatory breach. If anything, the fact that he was trying to amend the terms of the Conditional Permit suggests he was still attempting to comply with it. Further, if we accepted Hastings's argument on this score, then the inverse would also have to be true—if Hastings could be deemed out of compliance by merely filing the petition for reconsideration of the terms of the Conditional Permit, then Hastings could have only remained in compliance by *not* exercising his right to object. This cannot be. Such an application of the rule would essentially allow a consent order to prevent an applicant like Hastings from exhausting his administrative remedies, thereby unlawfully restricting his due process rights under IDAPA 37.03.07.070.

Hastings's arguments also fail to account for the surrounding circumstances of his ongoing dealings with the Department. Hastings met with the Department for a compliance conference on October 3, 2017, and then entered into the Consent Order. He later submitted revised restoration plans through Brockway Engineering until the Department issued its conditional approval through

10

the Conditional Permit. He also sought an extension to the Consent Order's deadline for a potential refund. Even when he objected to the conditions imposed by the Department in the Conditional Permit, Hastings stated that he "would be willing to participate in an informal meeting to discuss resolution of this matter" to avoid unnecessary delay or litigation.

It is concerning to this Court that the stipulated facts and missing documents have effectively left a two-year gap in the appellate record following these events. At oral argument, both sides suggested that there were additional documents that would shed light on what was happening during the two years, but they had not been made a part of the record and could not be referenced at this stage of the proceedings. Of course, the silence in the record cuts both ways. Both parties point to it, arguing over whether the silence should be interpreted as the Department failing to recognize that Hastings had breached the terms of the Consent Order or as proof the Department reasonably believed it did not need to do anything because Hastings was still working towards complying with the order. Either way, it is not determinative in this case. Hastings's argument ultimately asks this Court to conclude that the Department should have known Hastings violated, or even intended to violate, the Consent Order despite the fact that the documents we have in the record indicate that he was working with the Department to find solutions outside of litigation and *pursuant to* the Consent Order. That part of the record is clear. Therefore, we decline Hastings's invitation to use the Department's forbearance and cooperation against it, particularly where the record demonstrates no actual breach of the Consent Order.

When examining these facts in the light most favorable to Hastings, the earliest possible date that the Department "ought to have reasonably known" that Hastings did not intend to comply with the Consent Order was when he filed the underlying declaratory judgment action on November 15, 2021. We agree with the district court's conclusion that, until then, Hastings was in compliance with the Consent Order and had given every indication that he was attempting to remain in compliance. Because Hastings filed a petition for reconsideration of the conditions imposed in the Conditional Permit, the permit was not final and, therefore, did not authorize Hastings to commence alterations on the Big Wood River. Likewise, the Consent Order did not impose a performance deadline for the restoration work on the streambank. There was more work for both parties to do before obtaining a final permit, and, until filing this action, Hastings had shown himself to be a cooperative party who intended to comply with the Consent Order. Because the Department's enforcement action is not time-barred by the statute of limitations under Idaho

11

Code section 42-3809, it was entitled to summary judgment as a matter of law on this issue. Accordingly, we affirm the district court's award of partial summary judgment to the Department.

**B. The district court did not abuse its discretion by taking judicial notice of the Conditional Permit.**

Hastings next contends that the district court erred in taking judicial notice of the Conditional Permit, arguing that it contained information beyond those facts stipulated by the parties. He argues that the court's consideration of the Conditional Permit created "a lopsided factual record." While the Department agrees that the stipulation was binding on the parties, the Department argues that the stipulation did not preclude the introduction of the Conditional Permit into the record—particularly where the terms of the Conditional Permit are central to the case and it was not admitted for the purpose of contradicting any of the facts presented in the stipulation.

Whether a district court erred in taking judicial notice is an evidentiary question reviewed under an abuse of discretion standard. *Bass v. Esslinger*, 171 Idaho 699, 704, 525 P.3d 737, 742 (2023). There is no abuse of discretion where a trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Pursuant to Idaho Rule of Evidence 201, a court "may take judicial notice on its own" initiative or it "must take judicial notice if a party requests it and the court is supplied with the necessary information." I.R.E. 201(c). This rule governs judicial notice of adjudicative facts that are "not subject to reasonable dispute." I.R.E. 201(a) and (b). "An 'adjudicative fact' is . . . '[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.' " *Bass*, 171 Idaho at 704–05, 525 P.3d at 742–43 (brackets in original) (quoting *State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015)). In the case of stipulations, stipulated facts admitted by the parties "are the facts" and this Court has previously held that the consideration of additional evidence that "could be introduced for the purpose of changing or altering said facts" is improper. *Andrews v. Moore*, 14 Idaho 465, 470, 94 P. 579, 580–81 (1908).

12

Here, nothing in the stipulation barred consideration of the Conditional Permit, particularly where its existence and authenticity are acknowledged in the stipulation.[2] The Department maintains that the Conditional Permit was not introduced "for the purpose of changing or altering" the stipulated facts, but to help establish a timeline for calculating the accrual date of the statute of limitations. *See id.* at 470, 94 P. at 580–81. Importantly, Hastings has failed to establish which facts, if any, were changed or altered by admitting the Conditional Permit.

For these reasons, we conclude that the district court correctly determined that the Conditional Permit was an official document evidencing an official act of the Department under Idaho Code section 9-101(3). Thus, it was proper for judicial notice under Idaho Rule of Evidence 201 since it is "not subject to reasonable dispute" that this is the Conditional Permit referenced by the parties. Additionally, we conclude that by referring to the Conditional Permit only to (1) establish the date of the Conditional Permit's expiration and (2) confirm the notice given to Hastings of his right to request a hearing, the district court did not consider facts outside the scope of the bifurcated proceeding. The district court only referenced the Conditional Permit for a limited and permissible purpose. The district court's consideration of the document resulted in no alteration of the stipulated facts, nor did its submission create a "lopsided" record, as Hastings contends. Thus, judicial notice was appropriate here and well within the district court's reasoned discretion.

### C. The district court did not abuse its discretion in denying Hastings's motion for a continuance to conduct discovery.

Hastings next argues that the district court erred in denying his motion to continue the summary judgment hearing for the purposes of conducting "meaningful discovery." He contends that he was precluded from conducting further discovery so that he could introduce new evidence after the Department failed to adhere to the parties' stipulation, thereby giving the Department "the unilateral ability to augment the stipulated record . . . ." We agree with the Department that Hastings has failed to establish a need for additional discovery or show how it would have aided him in addressing the statute of limitations issue.

A court has discretion to grant or deny a motion for a continuance to conduct further discovery. *Bass*, 171 Idaho at 704, 525 P.3d at 742. Thus, this Court reviews the denial of a motion

---

[2] The joint stipulation, signed by counsel for both parties, states: "On May 17, 2019, the Department issued its Conditional Approval of Joint Application for Permits (S37-20565) . . . ."

to continue for an abuse of discretion. *Id.*; *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 899, 422 P.3d 1101, 1105 (2018). For summary judgment purposes, a court may continue the hearing "for good cause shown," I.R.C.P. 56(b)(3), or grant a nonmoving party relief from summary judgment where the nonmovant shows "it cannot present facts essential to justify its opposition," I.R.C.P. 56(d). For additional discovery, the party seeking a continuance bears the burden of establishing " 'what further discovery would reveal that is essential to justify their opposition,' making clear 'what information is sought and how it would preclude summary judgment.' " *Fagen, Inc. v. Lava Beds Wind Park, LLC*, 159 Idaho 628, 632, 364 P.3d 1193, 1197 (2016) (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005)). In ruling on the motion, the court may consider "the moving party's prior lack of diligence in pursuing discovery." *Id.* (citation omitted).

This issue stems from the district court's taking judicial notice of the Conditional Permit, which we discussed above. After the court admitted the Conditional Permit, Hastings filed a motion to continue the hearing and conduct limited discovery "about matters in the thirty-two pages of documents attached to the Department's statements of facts (the [Conditional] Permit) as they relate to the applicability of the statute of limitations . . . ." The court granted Hastings's motion to continue in part and denied it in part. The court did not permit Hastings to pursue additional discovery, but it continued the summary judgment hearing for supplemental briefing from the parties on whether the court could take judicial notice of the Conditional Permit, ultimately finding that judicial notice was appropriate.

On appeal, Hastings contends that he would have pursued discovery on several matters had the district court granted his motion for a continuance. Hastings asserts that he would have sought discovery on (1) the Department Director's knowledge of the Conditional Permit, referring to it as the "alleged amendment," and (2) whether there was consideration for this "alleged modification of the [Consent] Order . . . ." Yet the parties had stipulated that there was no amendment or modification to the Consent Order. Hastings also maintains that he would have pursued discovery on Golart's "credibility and bias" for "authentication of a document which he apparently prepared." Again, Hastings has provided no reason to doubt the authenticity of the Consent Order. Indeed, he conceded its authenticity before the district court. Additionally, Hastings claims he needed time to discover whether the Department "wrongfully induced [him] to sign the Consent Order" through false representations. However, these lines of discovery would not only contradict

14

the parties' stipulated facts that acknowledge the Conditional Permit existed and was issued by the Department, but also Hastings's admission before the district court that the Conditional Permit was accurate and authentic.

The additional reasons for discovery raised by Hastings are too vague to ascertain what information would be sought and how it would preclude summary judgment. Importantly, Hastings has failed to specify how any of the desired evidence, if pursued and discovered, would have changed the statute of limitations analysis; thus, he failed to meet his burden to show " 'what further discovery would reveal that is essential to justify [his] opposition,' making clear 'what information is sought and how it would preclude summary judgment.' " *Fagen*, 159 Idaho at 632, 364 P.3d at 1197 (citing *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005)). Accordingly, we can only view these requests, as the district court concluded, to be a "fishing expedition" for evidence that might somehow help his case in an unknown way. Hastings's answers at oral argument did little to persuade us otherwise. Therefore, we conclude that the district court did not abuse its discretion in denying Hastings's motion to continue summary judgment for the purpose of conducting discovery.

## D. The Department is not entitled to attorney fees on appeal.

The Department requests an award of attorney fees under Idaho Code section 12-117, arguing that Hastings "ignore[s] the plain reading of the Consent Order and Stipulation, advances nonsensical arguments which are not relevant to the statute of limitations issue, and misrepresents the relevant law in two instances." Idaho Code section 12-117(1) mandates that a court "shall award" fees to the prevailing party "in any proceeding involving as adverse parties a state agency or a political subdivision and a person," where the court determines that "the nonprevailing party acted without a reasonable basis in fact or law." This statute is "the exclusive basis" for awarding attorney fees in a case between a person and a governmental entity as adverse parties. *Idahoans for Open Primaries v. Labrador*, 172 Idaho 466, ___, 533 P.3d 1262, 1287 (2023).

While Hastings has lost this appeal, his arguments concerning the commencement date for the statute of limitations raised some important factual and legal questions that merited further review. Thus, although the Department is the prevailing party, we do not agree that Hastings acted without a reasonable basis in fact or law. Accordingly, we conclude that the Department is not entitled to an award of attorney fees.

## IV. CONCLUSION

15

For the foregoing reasons, we affirm the district court's award of summary judgment to the Department and hold that the enforcement action filed against Hastings in the Department's counterclaim was timely under Idaho Code section 42-3809. Likewise, we conclude that the district court committed no error when it took judicial notice of the Conditional Permit and denied Hastings's motion for a continuance. While the Department is not awarded attorney fees, it is entitled to costs as a matter of right as the prevailing party. I.A.R. 40(a).

Chief Justice BEVAN, Justices BRODY, ZAHN and MEYER concur.